IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| JEFFREY M. SMITH and SARAH A. SMITH, | ) |
| Plaintiffs, | ) |
| vs. | ) Civil No. 2021-10 |
| BRIAN OSTRANDER AND NORMAN JONES, ESQ., | ) |
| Defendants. | ) |

**MEMORANDUM OPINION and ORDER**

Before the Court is "Defendant Brian Ostrander's Motion to Compel Arbitration and Stay or Dismiss." [ECF 9]. Plaintiffs Jeffrey M. Smith and Sarah A. Smith filed an opposition to the motion [ECF 10] and Ostrander replied [ECF 12]. For the reasons stated below, the Court will grant the motion.

**I.     BACKGROUND**

The Smiths are the owners of a villa in Botany Bay on St. Thomas, United States Virgin Islands. Verif. Compl. [ECF 1] ¶ 8. Ostrander is the President of Ostrander Insurance, LLC. *Id.* ¶ 14. Norman Jones is an attorney. *Id.* ¶ 4. Ostrander and Jones jointly own Cat 5 Solutions, LLC ("Cat 5"), an entity that provides insurance services. *Id.* ¶¶ 12-13.

After their property sustained significant damage from Hurricanes Irma and Maria, the Smiths retained Jones to assist them in filing an insurance claim. Verif. Compl. [ECF 1] ¶ 11. Ostrander and Jones, operating as Cat 5, submitted an insurance claim on plaintiffs' behalf. *Id.* ¶ 17. The Smiths' insurer paid them $738,516.83; the Smiths paid Cat 5 $43,978 for its services. *Id.* ¶ 18. Thereafter, the Smiths contracted with Bayside Construction, LLC ("Bayside")—a

company Ostrander owned—for repairs to their property, as well as for certain improvements. *Id.* ¶¶ 13, 19, 23-24.

According to the Smiths, Ostrander and Jones breached their fiduciary duty to plaintiffs by using information obtained for the purpose of filing the insurance claim to fraudulently induce them into engaging Bayside, a company the Smiths claim was not qualified to perform the work on their property and overcharged them for substandard work. Verif. Compl. [ECF 1] ¶¶ 8-62. The Smiths assert three claims. As to both Ostrander and Jones, they allege fraudulent inducement and breach of fiduciary duty. *Id.* ¶¶ 63-71, 78-87. As to Ostrander, the Smiths also allege "illegal conduct." *Id.* ¶¶ 72-77.

In the motion currently before the Court, Ostrander seeks to compel arbitration and either stay or dismiss the case against him. [ECF 9] at 1. According to Ostrander, the Smiths cannot avoid arbitration because the issues they raise are governed by the arbitration provision in the contract between the Smiths and Bayside. *Id.* at 4-11. Although not a party to that agreement, Ostrander argues that, as the sole member and registered agent for Bayside, he is an intended third-party beneficiary of the contract and therefore has standing to demand arbitration. *Id.* at 10. Ostrander further contends that, by virtue of the position the Smiths took in separate litigation with Bayside, they have conceded that the arbitration provision applies to the instant dispute. *Id.* at 11-14. Specifically, Ostrander points out that in the other case, the Smiths sought to compel arbitration under the same agreement they now claim does not apply, despite the disputes being strikingly similar. *Id.*

The Smiths oppose the motion for arbitration on the grounds that Ostrander is neither a party to the contract between them and Bayside nor a third-party beneficiary thereof. [ECF 10]

at 5-9. Regarding Ostrander's status as a party, the Smiths argue that the express language of the contract controls and that here, the contract identifies the parties as Bayside and the Smiths. *Id.* at 6. Regarding Ostrander's status as a third-party beneficiary, the Smiths contend that the contract does not reflect that the parties either expressly or impliedly intended that any party other than Bayside and plaintiffs benefit from the contract. *Id.* at 7-8. The Smiths posit that Ostrander is, at most, an incidental beneficiary, with no attendant right to enforce the contract. *Id.* at 8. Finally, the Smiths argue that the fact that they sought to compel arbitration in the Bayside lawsuit has no bearing on the instant motion. *Id.* at 9.

## II. LEGAL STANDARDS

A. <u>The FAA</u>

Under the FAA, a district court has jurisdiction over a motion to compel arbitration only if the court would have jurisdiction over "a suit arising out of the controversy between the parties" without the arbitration agreement. 9 U.S.C. § 4; *accord Vaden v. Discover Bank*, 556 U.S. 49, 59 (2009) (observing that an independent basis for federal jurisdiction over a dispute is required and that the FAA is not itself a basis for federal jurisdiction). Here, diversity jurisdiction exists over the underlying substantive dispute under 28 U.S.C. §1332; supplemental jurisdiction exists over the local law claim under 28 U.S.C. §1337. Thus, this Court has jurisdiction to decide Ostrander's motion to compel arbitration.

The FAA applies to a contract "evidencing a transaction involving commerce to settle by . . . or . . . submit to arbitration" any controversy arising out of that contract.[1] 9 U.S.C. § 2.

---

[1] The FAA defines "commerce" as "commerce among the several States . . . or in any Territory of the United States . . . ." 9 U.S.C. § 1; *see Sewer v. Paragon Homes, Inc.,* 351 F. Supp. 596, 598 (D.V.I. 1972) (holding that the

Further, the FAA establishes a "strong federal policy in favor of resolving disputes through arbitration." *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 219 (3d Cir. 2014) (quotation marks omitted). Thus, "the Act [*i.e.*, the FAA], both through its plain meaning and the strong federal policy it reflects, requires courts to enforce the bargain of the parties to arbitrate" whenever possible. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) (stating that courts are required to resolve "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration"). In addition, the FAA requires that written arbitration agreements be "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ("[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration.").

Accordingly, prior to compelling arbitration pursuant to the FAA, a court must first conclude that (1) a valid agreement to arbitrate exists, and (2) the dispute falls within the scope of that agreement. *Flintkote Co.*, 769 F.3d at 220. "[A]rbitration is a matter of contract, and courts

---

FAA "applies to mandate stays of legal proceedings conducted in the District Court of the Virgin Islands"). The Supreme Court has "interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (citation omitted). The Supreme Court has further explained that the phrase "evidencing a transaction" means that the transaction turns out, in fact, to involve interstate commerce, "even if the parties did not contemplate an interstate commerce connection." *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 281 (1995).

"The bar to establish an interstate nexus is low." *Whyte v Bockino*, 69 V.I. 749, 762 n.10 (V.I. 2018). The FAA's broad interstate commerce requirement is satisfied in this case. The transaction was between individuals from Massachusetts (plaintiffs) and the U.S. Virgin Islands (defendant Ostrander) and, although it is not entirely clear from the record, possibly Texas or the U.S. Virgin Islands (defendant Jones). Further, the contract was to be performed in the U.S. Virgin Islands. Accordingly, the transaction involved interstate commerce.

must enforce arbitration contracts according to their terms." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019). Once the Court has determined that there exists a valid and enforceable arbitration provision, any party seeking arbitration under the agreement "is entitled to a stay of federal court proceedings pending arbitration as well as an order compelling such arbitration." *In re Pharm. Benefit Managers Antitrust Litig.*, 700 F.3d 109, 116 (3d Cir. 2012) (quotation marks omitted); *see* 9 U.S.C. §§ 3-4.

Finally, "traditional principles of state law allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (quotation marks omitted). However, the court "must expressly consider 'whether the relevant state contract law recognizes [the theory] as a ground for enforcing'" the contract. *Flintkote Co.*, 769 F.3d at 220 (quoting *Arthur Andersen LLP*, 556 U.S. at 632) (alteration added).

B.   Standards for Deciding a Motion to Compel Arbitration

Where "it is apparent" based on the complaint and supporting documents "that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 776 (3d Cir. 2013) (quotation marks omitted). In other words, "[m]otions to compel arbitration are reviewed under Rule 12(b)(6) '[w]here the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or . . . documents relied upon in the complaint).'" *Sanford v. Bracewell & Guiliani, LLP*, 618 F. App'x 114, 117 (3d Cir. 2015). Further, in determining whether to compel arbitration, courts rely on the

*Smith, et al. v. Ostrander, et al.*
Civil No. 2021-10
Page 6

principles of applicable state law. *See Golden Gate Nat'l Senior Care, LLC v. Addison*, 2014 WL 4792386, at *13 (M.D. Pa. Sept. 24, 2014) (citing *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 475 (1989)).

Here, the Smiths attached a copy of their contract with Bayside to their complaint, *see* [ECF 1-1], and refer to it repeatedly throughout. Thus, it is a "document relied upon in the complaint," and the Court reviews the motion to compel arbitration under the Rule 12(b)(6) standard. Furthermore, paragraph 20 of the contract provides for the application of "the laws of the US VIRGIN ISLANDS, not including its conflict laws." [ECF 1-1] ¶ 20.[2] Thus, the Court will apply Virgin Islands law to the instant dispute.

C.     Virgin Islands Law

"The Virgin Islands Supreme Court has not expressly adopted the common law rule for formation of a valid contract." *Valentin v. Grapetree Shores*, 2015 WL 13579631, at *3 (V.I. Super. Ct. June 30, 2015). "However, the basic elements for what constitutes a valid contract are so widely accepted and fundamental to the practice of law in the Virgin Islands and every other United States jurisdiction that maintaining these elements is unquestionably the soundest rule for the Virgin Islands."[3] *Id.* (citing *Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I. 373, 380 (2014)). Thus, "[i]n the Virgin Islands, a valid contract requires a 'bargain in which there is a

---

[2] Although neither party directly addresses the issue, both parties rely on Virgin Islands law for their positions.

[3] Where prior precedent does not provide "the appropriate common law rule," the court must first "ascertain[] whether any Virgin Islands courts have previously adopted a particular rule, then identify[] the position taken by a majority of courts from other jurisdictions, and finally determin[e] which approach represents the soundest rule for the Virgin Islands." *Gov't of Virgin Islands v. Connor*, 2014 WL 702639, at *4 (V.I. Feb. 24, 2014) (citing *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967 (V.I. 2011)). This process has come to be known as a "*Banks* analysis."

mutual assent to the exchange, and consideration.'" *Id.; accord Sunshine Shopping Ctr., Inc. v. LG Elecs. Panama, S.A.*, 2018 WL 4558982, at *7 (D.V.I. Sept. 21, 2018) (applying Virgin Islands law). "Assent is not measured by subjective intent, but by outward expression." *Valentin*, 2015 WL 13579631, at *3. Further, "[i]n an arbitration agreement, consideration exists where both parties agree to be bound by the arbitration." *Id.*

Lastly, with respect to contract interpretation, the Supreme Court of the Virgin Islands has observed that "[i]f a contract is unambiguous, 'the meaning of [its] terms [i]s a question of law.'" *Phillip v. Marsh-Monsanto*, 66 V.I. 612, 624 (V.I. 2017). The court explained:

> [t]o determine whether a contract is ambiguous, we resort to principles of contract interpretation, keeping in mind that our primary purpose is to ascertain and give effect to the parties' objective intent. *See United Corp.* [*v. Tutu Park, Ltd.*], 55 V.I. at 719 n.14 ("[W]hen a court interprets a contract, its task is not to reveal the subjective intentions of the parties, but what their words would mean in the mouth of a normal speaker of English, using them in the circumstances in which they were used." . . .) . . . Where the language of a contract is clear and unambiguous, the parties' intent must be derived from the plain meaning of its terms.

*Id*. at 624-25.

### III.   DISCUSSION

A.   <u>Whether There Exists a Valid Agreement to Arbitrate</u>

The parties agree that as between the Smiths and Bayside, there exists a valid agreement to arbitrate. On April 26, 2018, "Jeffrey & Sara Smith" entered into a contract with "Bayside Construction LLC" to perform construction work on the Smiths' Virgin Islands property. [ECF 12-1] at 1. The document was signed by the Smiths individually on April 26, 2018; the document

*Smith, et al. v. Ostrander, et al.*
Civil No. 2021-10
Page 8

was signed by Ostrander on behalf of Bayside on April 27, 2018. *Id.* at 7. Finally, paragraph 18 of the contract provides for binding arbitration of disputes under the agreement:

> The Parties agree to cooperate in avoiding and informally resolving their disputes. Warranty procedures first apply to any unresolved warranty claims. Any warranty claim that thereafter remains unresolved and any other claim or dispute of any kind or nature between the Parties arising out of or relating to this Agreement, or the breach of it, or the Project must be resolved by binding arbitration, and the rules and procedures of the arbitrator. The arbitrator's award is final and may be enforced in a court having jurisdiction and venue.

*Id.* ¶ 18. Thus, the Smiths and Bayside have a valid agreement to arbitrate.

B.     Whether the Instant Dispute Falls Within the Scope of the Contract

    1.     Whether the Claims are Subject to Arbitration

The Court must next determine whether the Smiths' claims against Ostrander and Jones are subject to the arbitration provision in the contract between the Smiths and Bayside. As noted above, the agreement's arbitration provision provides that "any other claim or dispute of any kind or nature between the Parties arising out of or relating to this Agreement, or the breach of it, or the Project must be resolved by binding arbitration." *See* [ECF 12-1] ¶ 18. Given the breadth and the plain meaning of that language, the Court concludes that the Smiths' claims are covered.

In Count One, plaintiffs claim that both Ostrander and Jones fraudulently induced them to contract with Bayside by misrepresenting Bayside's experience and by failing to disclose that Bayside lacked a business license. Verif. Compl. [ECF 1] ¶¶ 63-71. This claim therefore "relates" to the contract and the project. In Count Two, the Smiths allege that Ostrander engaged in illegal conduct in that he violated 27 V.I.C. § 331, a territorial statute that makes it "unlawful for any person to operate as a general construction contractor within the Virgin Islands unless he

is licensed as provided for this in chapter." *Id.* ¶¶ 72-77. This claim also "relates" to the contract and the project because the Smiths hired Bayside, through Ostrander, to perform contracted construction work on their Virgin Islands property. Finally, in Count Three, the Smiths aver that Ostrander and Jones breached their fiduciary duties to plaintiffs. According to the Smiths, Jones owed them a general fiduciary duty as their attorney and Ostrander owed them a specific fiduciary duty under 22 V.I.C. § 2 as their insurance adjustment representative. Verif. Compl. [ECF 1] ¶¶ 78-87. Defendants breached their obligations, the Smiths allege, by inducing them to contract with Bayside following the settlement of their insurance claim. *Id.* Like the fraudulent inducement claim, although this claim relates to conduct Ostrander and Jones engaged in prior to the formation of the agreement, it nevertheless still clearly relates to the agreement and to the project. Stated differently, but for the Smiths' interactions with defendants prior to entering the contract with Bayside, there would have been no contract. *See Zink v. Merrill Lynch Peirce Fenner & Smith, Inc.*, 13 F.3d 330, 332 (10th Cir. 1993) (holding that an arbitration provision in a contract between an investor and a securities broker applied to a dispute arising from bond transactions that occurred prior to the execution of the agreement, given the agreement's broad language). Accordingly, the Court finds the arbitration provision applies to the instant disputes.

    2.    <u>Whether Ostrander is Entitled to Compel Arbitration</u>

Next, the Court must decide whether Ostrander, as a non-signatory to the contract, is entitled to enforce the arbitration provision. Ostrander argues that because he is in privity with

Bayside and is also an intended third-party beneficiary of the contract, he may invoke the agreement's arbitration provision. [ECF 9] at 6-11.[4]

In *Suid v. Law Offices of Karin A. Bentz, P.C.*, an individual who retained counsel on a contingency fee basis sued his attorney and her law firm for breach of contract, negligent and/or intentional misrepresentation, reimbursement of improperly charged fees, and fraud. 2018 WL 5617950, at *1-2 (V.I. Super. Oct. 26, 2018). The attorney moved to compel arbitration under a provision within all five contracts for legal services, each of which only bore the client's signature. *Id.* at *3. The Superior Court of the Virgin Islands concluded that although the attorney had not signed any of the contracts, she was nevertheless an intended third-party beneficiary thereof. *Id.* at *4. The Court explained:

> To prove intended beneficiary status, the third-party must show that the contract reflects the express or implied intention of the parties to the contract to benefit the third-party. The contract need not name a beneficiary specifically or individually in the contract; however, the court must examine the terms of the contract as a whole, giving them their ordinary meaning. Moreover, "a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties . . . [and] the circumstances indicate that the promise intends to give the beneficiary the benefit of the promised performance."

---

[4] Ostrander also contends that as a non-signatory to the contract, he may invoke equitable estoppel to prevent the Smiths from avoiding arbitration because "the nexus of the claims [is] inextricably intertwine[d] with the subject matter of the agreement between the Smith and Bayside." [ECF 9] at 7-8 (citing *E.I. DuPont de Nemours & Co. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 202 (3d Cir. 2001) (discussing cases from various circuits recognizing the ability of a non-signatory to bind a signatory under an estoppel theory)). The Smiths do not address this argument. It is not clear, however, whether courts in the Virgin Islands would recognize this theory, and the Court therefore decides the instant motion on other grounds.

Case: 3:21-cv-00010-RAM-RM Document #: 27 Filed: 08/17/21 Page 11 of 12

Smith, et al. v. Ostrander, et al.
Civil No. 2021-10
Page 11

*Id.* The Court then reasoned that because, *inter alia*, the attorney was "the owner, agent, and principal of the Firm," the attorney was therefore an intended third-party beneficiary of the contracts at issue. *Id.*

Here, the contract between the Smiths and Bayside reflects the intention, albeit not express, of the parties to benefit Ostrander. Although the agreement uses the term "Contractor" to refer to Bayside, the Smiths do not dispute that Ostrander is the owner of Bayside.[5] Further, Ostrander signed the contract on behalf of Bayside. [ECF 12-1] at 7. In addition, communications between Bayside and the Smiths were made through Ostrander, suggesting that the Smith understood that Ostrander was Bayside's principal. *See, e.g.*, Verif. Compl. [ECF 1] ¶ 50 ("The poor quality of Bayside's work was acknowledged by Mr. Ostrander when he wrote to the Smiths on December 12, 2018, acknowledging that the work was unfinished and needed to be corrected."); *id.* ¶ 51 ("In late 2018 and early January 2019, they had gradually come to be aware of a few issues with construction execution, that had not been clearly evident in the photos that they had received from Mr. Ostrander in Massachusetts in the Fall of 2018, which were taken from a distance and looked good."). Thus, under these circumstances, Ostrander is an intended third-party beneficiary of the contract between Bayside and the Smiths and, as in *Suid*, "recognition of a right to performance in [Ostrander] is appropriate to effectuate the intention of the parties." *See Fugmann v. Detmer*, 2019 WL 3219333, at *8 (E.D. Ky. July 17, 2019) ("In Kentucky, third-party beneficiaries may enforce the terms of a contract if the parties intend the third party to benefit directly under the contract. . . . Company owners . . . clearly [stand] to benefit from any commercial arrangements"

---

[5] Verif. Compl. [ECF 1] ¶ 19.

involving their businesses.") (citations and quotation marks omitted) (alteration in original); *Hossain v. JMU Props., LLC*, 147 A.3d 816, 820 (D.C. 2016) (holding that, under D.C. law, the sole owner of a business was an intended third-party beneficiary of a contract because he negotiated and signed the agreement in his capacity as the company's vice president—making his involvement "plainly ascertainable"—and because he clearly stood to benefit from the agreement). As an intended third-party beneficiary,[6] The Court finds that Ostrander is entitled to enforce the contract's arbitration provision.

## IV.     CONCLUSION

For the foregoing reasons, and the premises considered, it is ORDERED that:

(1) the motion to compel arbitration [ECF 9] is GRANTED;

(2) this matter shall be STAYED while arbitration proceeds; and

(3) the parties shall submit a joint report regarding the status of the arbitration every 90 days, starting on November 15, 2021.


**Dated:** August 17, 2021                     S\ _____
                                                                  **RUTH MILLER**
                                                                  United States Magistrate Judge

---

[6] In *Lopez v Renaissance St. Croix Carambola Beach Resort & Spa*, the Virgin Islands Superior Court concluded, following a *Banks* analysis, that "[t]o allow third-party beneficiaries to enforce contracts is . . . the best rule in the Virgin Islands." 2019 WL 948416, at *5 (V.I. Super. Jan. 23, 2019). The undersigned adopts the court's reasoning.